UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WARNER GOMEZ,<br><br>　　　　　　Plaintiff,<br>　vs.<br><br>THE CITY OF NEW YORK, POLICE OFFICER JACY REESE, SGT. ROBYN KREPPEL, SGT. ALFRED GALLICCHIO, POLICE OFFICER TAIWO ADELEKE, POLICE OFFICER ULYSSES DADACAY, and POLICE OFFICER JOHN DOE,<br><br>　　　　　　Defendants. | 15-CV-7524 (JPO)<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES**<br><br>**JURY TRIAL DEMANDED** |

By and through his attorneys, Randolph M. McLaughlin and Debra S. Cohen, Plaintiff Warner Gomez alleges upon knowledge, information, and/or belief as follows:

**PRELIMINARY STATEMENT**

1. This is an action against the above named police officers and sergeants who abused their authority, violated the constitutional and civil rights of Plaintiff, and pressured him to lie about the events that led to this lawsuit. As more fully discussed below, while on duty, Defendants Reese and Adeleke conspired to lure Plaintiff to a location so that Defendant Reese could use his New York City Police Department ("NYPD") issued pepper spray to assault and batter Plaintiff. After subjecting Plaintiff to an unlawful use of pepper spray, said Defendants were aided and abetted by Defendants Kreppel, Gallicchio, Dadacay and John Doe in an effort to dissuade Plaintiff from filing charges or otherwise reporting the assault of Plaintiff by Defendant Reese. The actions aforesaid violated Plaintiff's constitutional rights secured under 42 U.S.C. §1983 for which he is entitled to an award of compensatory and punitive damages.

2. As more fully discussed below, the actions and/or inactions of the Defendants

1

subjected Plaintiff to or caused Plaintiff to be subjected to a hostile work environment in violation of New York City Administrative Code §8-107, *et seq.*

## JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331, 1367, and 1343.

4. Venue in the Southern District of New York is proper under 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to this action occurred within the district.

## PARTIES

5. Plaintiff Warner Gomez is a Hispanic police officer employed by the City of New York.

6. Defendant The City of New York ("City") is a duly constituted municipal corporation of the State of New York. It is authorized under the laws of the State of New York to maintain a police department, the New York City Police Department ("NYPD"), which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers. At all times relevant hereto, Defendant City was the employer of the Plaintiff and Defendants herein. The actions of Defendants were committed within the scope of their employment and under color of law.

7. Defendant Jacy Reese was at all times relevant herein an on-duty African-American police officer employed by the City of New York and NYPD. Said Defendant is sued in his individual and official capacity.[1]

---

[1] In response to a partial motion to dismiss the First Amended Complaint, the District Court

8. Defendant Robyn Kreppel[2] was at all times relevant herein a Caucasian police sergeant employed by the City of New York and NYPD. At all times relevant to the facts of the Complaint, said Defendant was acting under color of law and within the scope of her employment by the City of New York. Said Defendant is sued in her individual and official capacities.

9. Defendant Alfred Gallicchio was at all times relevant herein a Caucasian police sergeant, and a delegate of the Sergeants Benevolent Association ("SBA"), employed by the City of New York and NYPD. At all times relevant to the facts of the complaint, said Defendant was acting under color of law and within the scope of his employment by the City. Said Defendant is sued in his individual and official capacities.

10. Defendant Taiwo Adeleke was at all times relevant herein an African-American police officer employed by the City of New York and NYPD. At all times relevant to the facts of the Complaint, said Defendant was acting under color of law and within the scope of her employment by the City. Said Defendant is sued in her individual and official capacities.

11. Defendant Ulysses Dadacay was at all times relevant herein an Asian-American police officer, and a delegate of the Patrolman's Benevolent Association ("PBA"), employed by the City of New York and NYPD. At all times relevant to the facts of the Complaint, said Defendant was acting under color of law and within the scope of his employment by the City. Said Defendant is sued in his individual and official capacities.

---

determined as a matter of law that Defendant Reese "was not acting under color of law when he assaulted Plaintiff." Dkt. No. 83, at 10. Finding no underlying constitutional violation committed by Reese because he was a private actor, the Court dismissed Count One against Defendants Reese and Adeleke for violations of the Fourth and Fourteenth Amendments pursuant to § 1983 and Count Two for supervisory liability against Defendants Kreppel and Gallicchio pursuant to 42 U.S.C. § 1983. The Second Amended Complaint incorporates the Court's determinations but Plaintiff preserves the right to appeal these determinations at the appropriate time.

[2] At the time of the incident in question, Defendant Robyn Kreppel was an NYPD police sergeant. She has since been demoted to the rank of police officer.

12. Defendant John Doe, whose name is not presently known to Plaintiff, was at all times relevant herein a police officer, and a delegate of the PBA, employed by the City of New York and NYPD.

## FACTUAL ALLEGATIONS

13. The incident complained of herein occurred on March 22, 2014.

14. At approximately 10:15 p.m., Plaintiff and his partner Police Officer Esteban Abreu, and Defendants Reese and Adeleke, all of the 32nd precinct, responded to a call regarding an Emotionally Disturbed Person ("EDP").

15. During the course of the arrest, a scuffle ensued between the responding officers and the EDP.

16. As a result of the scuffle, Officer Abreu, Defendant Reese and Defendant Adeleke used physical force to restrain the EDP, and Plaintiff discharged his oleoresin capsicum spray ("OC Spray").

17. Due to the close proximity of the Officers to the EDP, Officer Abreu, Defendant Reese and Defendant Adeleke received some of the discharge from the OC Spray.

18. To effectuate the arrest, Defendant Reese used his department-issued handcuffs on the EDP.

19. After the EDP was placed in an ambulance, Plaintiff said "Sorry" to Defendant Reese. Defendant Reese did not respond, walked away, and got into his police car.

20. The EDP was then transferred to Harlem hospital, escorted by Plaintiff and Officer Abreu.

21. At the hospital, Plaintiff and Officer Abreu retrieved Defendant Reese's handcuffs.

4

22. Officer Abreu then called Defendant Reese on his personal cellphone. Defendant Reese ostensibly arranged a meeting to retrieve his handcuffs.

23. At approximately 10:40 p.m., Plaintiff and Officer Abreu met with Defendants Reese and Adeleke on 5th Avenue, between 135th and 136th Street, to return Defendant Reese's handcuffs.

24. Unbeknownst to Plaintiff, Defendants Reese and Adeleke had entered into agreement to distract Officer Abreu, so that Reese could discharge his OC spray in Plaintiff's face and eyes.

25. Officer Abreu pulled his marked police vehicle next to Defendants Reese and Adeleke's marked police vehicle.

26. Defendant Reese then motioned for Plaintiff and Officer Abreu to park ahead of his vehicle, telling Officer Abreu that Defendant Adeleke wished to speak to him.

27. After Officer Abreu parked his vehicle, Defendant Reese exited his vehicle and walked over to Plaintiff, as Officer Abreu exited his vehicle and walked over to Defendant Adeleke.

28. Unbeknownst to Plaintiff at that time, Defendant Adeleke did not wish to speak with Officer Abreu, but instead called Officer Abreu over as a ruse, to distract him.

29. Defendant Adeleke began engaging Officer Abreu in meaningless conversation which caused Officer Abreu to become suspicious. He then decided to watch the interaction between Plaintiff and Defendant Reese.

30. Defendant Reese approached the passenger side door of Officer Abreu's marked police vehicle, where Plaintiff was seated, and stated "Listen, let me tell you something. Do you think it's funny to spray other officers?"

31. Plaintiff then responded, "What are you talking about?"

32. Defendant Reese then took his handcuffs from Plaintiff, pulled out his Department issued OC Spray, and, from a distance of 10-12 inches, intentionally discharged it directly into Plaintiff's eyes and then stated, "Now you know how it feels."

33. Plaintiff was blinded and experienced intense pain inside and outside of his eyes.

34. Defendant Reese' unlawful discharge of his OC Spray could have permanently damaged Plaintiff, as the discharge occurred under circumstances where Plaintiff could have sustained detached retinas from the pressure of the fluid discharge.

35. As Plaintiff was suffering from the effects of the OC Spray, he tried to exit the police vehicle.

36. Defendant Reese prevented Plaintiff from exiting the vehicle by holding the door shut as Plaintiff struggled to get out.

37. Officer Abreu then ran over to the police vehicle and pushed Defendant Reese out of the way.

38. Officer Abreu then drove himself and Plaintiff away from the scene, to 137th Street and Lenox Avenue.

39. Plaintiff and Officer Abreu then notified Defendant Robyn Kreppel, the Sergeant in charge of Patrol Operations that night, of the incident.

40. Officer Abreu notified Desk Sergeant Jose Carabello that Reese had intentionally discharged OC Spray into Plaintiff's eyes.

41. Defendant Kreppel arrived at 137th Street and Lenox Avenue, followed by SBA delegate Defendant Alfred Gallicchio, PBA delegate Defendant Ulysses Dadacay and PBA delegate Defendant Police Officer John Doe.

42. Defendant Kreppel contacted the Emergency Service Unit ("ESU") regarding the incident. When ESU arrived, Plaintiff was treated for the injuries to his eyes.

43. Plaintiff was then transported to Mount Sinai-St. Luke's Hospital, 1111 Amsterdam Avenue, New York, New York 10025. Officer Abreu and Defendants Kreppel, Gallicchio, Dadacay and John Doe followed in their vehicles.

44. Plaintiff was then medically treated for the injuries to his eyes from the OC Spray, injuries to his knee he sustained from trying to exit Officer Abreu's car after he was sprayed, and injuries to his shoulder he sustained from his attempts to restrain the EDP earlier that evening.

45. Plaintiff told EMS and hospital personnel that he was purposefully sprayed with OC Spray by a colleague.

46. After Plaintiff was placed in a hospital room, Defendants Dadacay and John Doe entered and began speaking with Plaintiff.

47. Defendant Dadacay, in an attempt to cover up the incident and dissuade Plaintiff from filing a report or bringing criminal charges, stated, "Are you sure this happened? Are you sure you're not hurt from any other incidents?" Plaintiff responded, "Yes, Reese hurt my eyes with pepper spray and wouldn't let me out of the car. How could you question me on that?"

48. Continuing in his effort to dissuade Plaintiff from filing departmental or criminal charges, Defendant Dadacay informed Plaintiff that if he went forward with a complaint against Defendant Reese, Plaintiff would be transferred, probably placed on modified duty, possibly be on the news and that he would be miserable. Defendant Dadacay also stated that Officer Abreu's promotion to sergeant would be jeopardized, and Plaintiff would be labeled a "rat" for the rest of his career.

49. Defendant Dadacay stated, "I know how you feel but this is not the way to do it,

you take him to the Smoker."

50. The "Smoker" is an event where, instead of filing departmental or criminal charges against fellow officers, police officers who have disputes with each other are encouraged to fight each other in a boxing match. Notices for the "Smoker" are posted in local police precincts and fights are recorded and posted on YouTube.

51. Before leaving Plaintiff's hospital room, Defendant Dadacay stated that he would make sure the Internal Affairs Bureau ("IAB") was not yet notified so they could keep the incident "in-house".

52. Defendants Dadacay, Kreppel, Gallicchio and John Doe then left the hospital.

53. Approximately two hours later, Plaintiff and Officer Abreu left the hospital and returned to the 32nd precinct stationhouse where Defendant Dadacay was outside waiting for them.

54. Defendant Dadacay then instructed them to go into a room where Defendants Reese and Adeleke were present. Defendants Kreppel and Gallicchio were at the desk doing paperwork.

55. Defendant Dadacay then spoke to Plaintiff, Officer Abreu and Defendants Reese and Adeleke and told them they would all be interviewed by the Executive Officer of the 32nd precinct, Captain Garcia. Defendant Dadacay then instructed them to tell Captain Garcia that while Defendant Reese was showing Plaintiff how to use OC Spray, he accidentally sprayed Plaintiff.

56. One by one, Plaintiff, Officer Abreu and Defendants Reese and Adeleke spoke with Captain Garcia. Defendant Dadacay was present for each interview to ensure that Plaintiff told Captain Garcia the cover story and not the truth.

57. Plaintiff was intimidated that Defendant Dadacay was present for his interview with Captain Garcia and was afraid, given the threats that Defendant Dadacay had made, to tell the facts of the incident.

58. Following the interviews, Plaintiff was handed Line of Duty paperwork and Defendant Gallicchio instructed him to sign.

59. The Line of Duty reports addressed shoulder and knee injuries sustained by Plaintiff during the arrest of the EDP. The incident with Defendant Reese and the injuries Plaintiff sustained to his eyes was not mentioned on the form that had been prepared by Defendants Gallicchio and Kreppel.

60. After Plaintiff signed the report, Defendant Dadacay shook hands with Plaintiff and told him that Defendant Reese would be placed on punishment post.

61. Defendant Reese was never placed on punishment post.

62. Defendant Kreppel, SBA delegate Defendant Gallicchio, PBA delegate Defendants Dadacay and John Doe, and Defendants Reese and Adeleke collectively decided to cover up the assault, failed to notify the IAB, and lied to Captain Garcia.

63. Defendant Kreppel failed to notify IAB regarding the incident, failed to contact the Duty Captain regarding the incident, and failed to file a "Pepper Spray Aided Report" as required pursuant to New York City Police Department Policies and Procedures.

64. Defendant Kreppel failed to file the appropriate documents to protect Plaintiff's legal interest in protecting his pension rights with respect to Line of Duty injuries and future pension valuations.

65. Officer Abreu was threatened by one or more of the aforementioned Defendants that he would be punished if he refused to lie about the incident.

66. On information and belief, Desk Sergeant Carabello notified the IAB about the incident.

67. Despite the efforts by the named defendants to dissuade Officer Abreu to report the incident, Officer Abreu also contacted the IAB regarding the incident.

68. As a result of the pressure, threats, and intimidation, Plaintiff did not notify IAB regarding the incident.

69. Following the incident, Plaintiff and Officer Abreu failed to receive backup from fellow officers when they were sent out on service calls.

70. Subsequently, Plaintiff was then told by PBA delegate Defendant Dadacay that someone had reported the incident to IAB.

71. As a result of the IAB report, Plaintiff was ordered to report for an interview with the IAB investigators ("GO 15 Interview").

72. Before Plaintiff's interview, he was approached by Defendant Dadacay, who reminded Plaintiff to "stick to the story" that the named defendants had agreed to previously and to cover up the true facts.

73. Plaintiff was also approached by Defendant Reese who told him "it's going to come down to what we say." Plaintiff responded that he planned on telling the truth.

74. On August 1, 2014, Plaintiff's GO 15 interview was conducted by Patrol Borough Manhattan North Investigation personnel. Immediately after the interview, one of the interviewers, Sergeant Young, told Plaintiff that he should not press charges because Defendant Reese was going to get suspended anyway.

75. Approximately three to four weeks later, Defendant Dadacay asked Plaintiff if he stuck to the story. Plaintiff told him the he did not. Defendant Dadacay's face went pale.

76. On or about October 1, 2014, Plaintiff was summoned into Commanding Officer Stevenson's office. Commanding Officer Stevenson told Plaintiff that since Plaintiff stated in his GO 15 Interview that he felt hostility working in the 32nd precinct, he should fill out a transfer request form.

77. Plaintiff filled out the transfer request form, and on or about October 3, 2014, he was transferred to the 30th precinct.

78. In November 2015, Plaintiff received a notification from the Civilian Complaint Review Board ("CCRB") that a complaint had been made against him.

79. When Plaintiff attended the interview in regards to the complaint, he was provided paper work that presented the allegations and named the complainant. The allegation stated that Plaintiff had used pepper spray against an individual and Defendant Reese was listed as the Complainant.

80. Plaintiff asked the PBA lawyer who was present at the interview if she was aware that the complainant was a fellow officer. She replied that she was not aware and subsequently rescheduled the interview for a later date.

81. At the rescheduled interview, Plaintiff told his story.

82. Plaintiff then received an exoneration letter from CCRB, dated December 18, 2015, which stated that his use of pepper spray on March 22, 2014 was "unsubstantiated".

83. As a result of the incident, Plaintiff has undergone an extreme amount of stress and emotional distress.

84. He has also been subjected to a hostile work environment as a result of telling the truth about the incident.

85. He has been labeled a "rat" by his fellow officers.

86. While at work as a police officer, Plaintiff has been subjected to verbal abuse by his fellow officers for reporting the OC Spray incident.

87. In addition to his fellow officers subjecting him to verbal abuse, supervisors, in his precinct, including, but not limited to the named sergeants who witnessed the abuse and to whom it had been reported, failed to intercede to stop it.

88. On information and belief, Plaintiff has been subjected to verbal abuse and threats on account of his ethnicity and for having the temerity to report abuse by a fellow officer.

89. On several occasions, when Plaintiff responded to radio dispatches to the scenes of criminal activities, no other officers assisted him or backed him up.

90. As a result of the foregoing, Plaintiff's life has been in danger whenever he had to respond to the scene of incidents.

91. As a result of the foregoing, Plaintiff has suffered and continues to suffer mental and emotional distress and/or pain and suffering.

## FEDERAL CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

*(42 U.S.C. Section 1983 for Violation of the Fourteenth Amendment)*

92. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

93. Defendant Reese while on duty, sprayed Plaintiff in the eyes and face with police department issued OC Spray while holding the police vehicle's door shut to prevent Plaintiff's escape.

94. Defendant Adeleke, Reese's partner, was aware of Reese's plan to assault Plaintiff with pepper spray. Defendant Adeleke and Reese entered into an agreement that

Adeleke would drive Reese to a location where Plaintiff would be present. Defendant Adeleke drove a police marked patrol car to that location and was aware that Reese planned to pepper spray Plaintiff. Defendant Adeleke and Reese had planned that Adeleke would call Plaintiff's partner away from the police vehicle where Plaintiff was sitting so that Plaintiff's partner could not intervene to prevent Reese from carrying out his plan to harm Plaintiff. Defendant Adeleke, at all times relevant to the claim asserted, was aware of Reese's plan and had agreed, in advance, to assist Reese in the assault of Plaintiff as aforementioned.

95. By virtue of the foregoing allegations, Defendant Adeleke sanctioned, encouraged and enabled Defendant Reese's attack of Plaintiff through words and actions that implicitly and explicitly communicated to Reese that he would not be arrested, punished, or otherwise interfered with while he inflicted injury on Plaintiff.

96. Defendant Adeleke condoned and encouraged Defendant Reese's actions when she drove him to the rendezvous with Plaintiff and distracted Plaintiff's partner away from their patrol car to enable Reese's attack.

97. Based on a determination by the Court that Defendant Reese was not acting under color of law, and thus a private actor, when he inflicted injuries on Plaintiff, Defendant Adeleke's actions constituted a violation of Plaintiff's substantive due process rights under the Fourteenth Amendment pursuant to the "state created danger" theory.

## SECOND CLAIM FOR RELEIF

(*Violation of 1st and 14th Amendment to Petition Government for Redress of Grievances*)

98. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

99. Defendants Reese, Adeleke, Kreppel, Gallicchio, Dadacay and John Doe, under

color of law and with the indicia of authority of New York City Police Officers, violated Plaintiff's constitutional rights to petition the Government for a redress of grievances by conspiring to keep Plaintiff from accurately reporting what occurred and from being believed once he did.

100. Defendants Reese, Adeleke and Kreppel made false statements when interviewed about the incident in order to cover-up their wrongdoing, chill efforts by Plaintiff to report what actually occurred and to avoid discipline or punishment for their actions.

101. Defendants Kreppel, Gallicchio, Dadacay and John Doe discouraged Plaintiff from filing a formal complaint or criminal charges regarding the aforementioned incident.

102. Defendants Kreppel, Gallicchio, Dadacay and/or John Doe told Plaintiff to lie to the Captain regarding the aforementioned incident.

103. Defendant Reese further attempted to intimidate Plaintiff by filing a complaint with the Civilian Complaint Review Board against Plaintiff for Plaintiff's use of pepper spray on the day of Reese's attack.

104. As a direct result of their actions, Plaintiff was intimidated and did not initially report the incident to IAB.

105. As a direct result of their actions, Plaintiff did not, initially, file criminal charges against Defendant Reese.

106. As a direct and proximate result of the aforementioned actions and/or inactions of said Defendants, Plaintiff's constitutional rights under the First and Fourteenth Amendments were violated by said Defendants.

## PUNITIVE DAMAGES

107.   Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

108.   The acts of the individual Defendants were willful, wanton, malicious and oppressive. These acts were without any justification and caused Plaintiff severe and ongoing suffering. Such acts therefore warrant an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follow:

a.   Compensatory damages;

b.   Punitive damages in an amount to be determined at trial;

c.   An award of the costs and expenses of this action including, but not limited to, expert and attorneys' fees to the Plaintiff pursuant to 43 U.S.C. §1988; and

d.   Any such other and further relief as this Court may deem appropriate.

## A JURY TRIAL IS DEMANDED

DATED:   New York, New York
         March 27, 2018

**NEWMAN FERRARA LLP**

By:   *s/ Randolph M. McLaughlin*
      Randolph M. McLaughlin
      rmclaughlin@nfllp.com
      Debra S. Cohen
      dcohen@nfllp.com
      Danielle B. Sullivan
      dsullivan@nfllp.com
      Frank H. Foster
      ffoster@nfllp.com
      1250 Broadway, 27th Floor
      New York, New York 10001
      Tel: 212-619-5400
      Fax: 212-619-3090
      *Attorneys for Plaintiff*